IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Criminal No. 3:12-CR-388-D |
| | § | |
| MICHAEL NERIA, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Michael Neria ("Neria")—charged with possession of a firearm by an individual having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)—moves to suppress evidence obtained as a result of a search and seizure on July 30, 2012. He contends that the police officers could not direct him out of his parked vehicle, that the ensuing search of the vehicle was unlawful, and that the incriminating statements he made after his arrest at the scene were fruit of the poisonous tree. Following an evidentiary hearing, and for the reasons that follow,[1] the court denies the motion.

I

On July 30, 2012 two Dallas Police Department ("DPD") officers, Daniel Foster

---

[1]Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in this memorandum opinion and order its essential findings.

("Officer Foster")[2] and George Garcia ("Officer Garcia"),[3] were patrolling the Arcadia Park area of Oak Cliff, an area of the city of Dallas that they often patrol. Officers Foster and Garcia observed a vehicle illegally parked in front of a known drug house on Morocco Avenue.[4] DPD had received complaints about this house and another house located across the street. Both houses were considered active drug locations. Neria was sitting in the front passenger seat of the vehicle, and his brother, Bennie Delatorre ("Delatorre"), was sitting in the driver seat. The officers exited their police vehicle and approached on foot—Officer Foster on the driver side of the vehicle[5] and Officer Garcia on the passenger side. As the officers approached the vehicle, they observed Neria make a quick motion, bending down toward the floorboard. As soon as Officer Foster saw Neria make this motion, he was concerned about the possibility that Neria was reaching for a weapon or trying to destroy evidence. When the officers reached the front windows of the vehicle, they began talking to Neria and Delatorre. Both windows were rolled down, giving the officers an unobstructed

---

[2]Officer Foster is a police officer with approximately 12 years of experience. As an officer assigned to the southwest area of Dallas, his primary job is to investigate drug complaints. He has completed drug training with DPD, made more than 1,000 drug arrests, and commonly comes into contact with methamphetamine, heroin, cocaine, and marihuana as part of his job.

[3]Officer Garcia is a police officer with approximately 14 years of experience. He has been involved in hundreds of drug investigations and is familiar with methamphetamine, heroin, cocaine, and marihuana.

[4]Both officers testified that they were familiar with this particular area, often patrolled it for drug activity, and knew of two active drug houses on Morocco Avenue.

[5]Because the vehicle was parked facing the wrong way on the street, the driver side was actually the side nearest the curb.

view of the interior of the vehicle's passenger compartment.  Both officers observed a small, clear plastic baggie inside the passenger compartment near (or on top of) the center console. The baggie contained a white residue, which the officers believed to be methamphetamine or cocaine.

After observing the baggie, Officers Foster and Garcia asked Neria and Delatorre to exit the vehicle.  As Neria was getting out of the vehicle, Officer Garcia asked him if he had any weapons or drugs.  Neria responded yes, that he had some guns, and pointed toward the floorboard of the front passenger seat (where he had been sitting).  Officer Garcia perceived this gesture as Neria's attempt to retrieve the firearms.  He told Neria not to do that and that he would retrieve them instead.  Officer Garcia then retrieved from the passenger-side floorboard a bag with three firearms inside.  After Neria exited the vehicle, he was read his *Miranda* rights and placed under arrest.  Neria waived his *Miranda* rights and subsequently made several incriminating statements about the firearms, telling the officers that he believed them to be stolen and that he had intended to sell them.  Officer Foster read Delatorre his *Miranda* rights and questioned him, but Delatorre was released without being arrested.

Neria moves to suppress the evidence seized during the search of the vehicle and the incriminating statements he made at the scene following his arrest.  The government opposes the motion.

## II

"A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional."  *United States v.*

- 3 -

*Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001)).  "However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *Id.* (citing *United States v. Castro*, 166 F.3d 728, 733 n.7 (5th Cir. 1999) (en banc)).  The government bears the burden of proving at a suppression hearing by a preponderance of the evidence that the Fourth Amendment has not been violated.  *United States v. Matlock*, 415 U.S. 164, 177-78 n.14 (1974).

III

The court first considers the lawfulness of the police officers' approach of the vehicle and their request that Neria and Delatorre exit the vehicle.

A

Courts evaluate the legality of traffic stops under the two-pronged analysis described in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).  *See United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).  "Courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.* (citing *Terry*, 392 U.S. at 19-20).  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Miller*, 146 F.3d 274, 277 (5th Cir. 1998) (quoting *Wren v. United States*, 517 U.S. 806, 810 (1996) (internal quotation marks omitted)).

Neria concedes that he was sitting in a vehicle parked on the left-hand side of a two-

way roadway when the officers approached his vehicle. Because the vehicle was parked in this manner, it was parked illegally, in violation of Tex. Transp. Code Ann. § 545.303(a) (West 2011)[6] and Dallas, Tex. Rev. City Code ch. 28, art. XI, § 28-88.[7] Because the vehicle was parked illegally, Officers Foster and Garcia had probable cause to conduct a traffic stop.[8]

B

The court next considers the lawfulness of the police officers' directive that Neria and Delatorre exit the vehicle. Neria contends that their directive was unlawful because, at most, they could only issue the occupants of the vehicle a parking citation. The court disagrees. Under the Fourth Amendment, "a law enforcement officer making a traffic stop [can] order the driver and any passengers to exit the vehicle pending completion of the stop." *United*

---

[6]Tex. Transp. Code Ann. § 545.303(a) provides: "An operator who stops or parks on a two-way roadway shall do so with the right-hand wheels of the vehicle parallel to and within 18 inches of the right-hand curb or edge of the roadway."

[7] Dallas, Tex. Rev. City Code ch. 28, art. XI, § 28-88(b) provides, in pertinent part: "A person commits an offense if he stops, stands, or parks a vehicle upon a two-way roadway . . . on the left-hand side of the roadway[.]" Dallas, Tex. Rev. City Code ch. 28, art. XI, § 28-88(b)(1) (alterations added).

[8]Although the court refers to this encounter as a "traffic stop," it is clear that the vehicle was already stopped when the officers observed the vehicle. That the underlying offense was a parking (i.e., non-moving) violation rather than a moving violation does not change whether the police officers had lawful authority to conduct an investigatory stop and direct that Neria and Delatorre exit the vehicle. *Cf. Flores v. City of Palacios*, 381 F.3d 391, 402-03 (5th Cir. 2004) (holding that violation of Tex. Transp. Code Ann. § 545.303(a) provided authority to detain suspect); *see also United States v. Choudhry*, 461 F.3d 1097, 1101 (9th Cir. 2006) (noting agreement with *Flores* and holding that parking violation justified investigatory stop of defendant's vehicle); *United States v. Copeland*, 321 F.3d 582, 594 (6th Cir. 2003) (holding that parking violation can form basis for probable cause to conduct investigatory stop of vehicle); *United States v. Thornton*, 197 F.3d 241, 248 (7th Cir. 1999) (same).

*States v. Meredith*, 480 F.3d 366, 369 (5th Cir. 2007) (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977));[9] *see also United States v. Davidson*, 51 Fed. Appx. 929, 2002 WL 31415244, at *1 (5th Cir. Oct. 10, 2002) (per curiam) (noting that police officers may order passengers to exit a lawfully stopped vehicle); *United States v. Rodriguez*, 275 F.3d 43, 2001 WL 1223738, at *1 (5th Cir. Oct. 3, 2001) (per curiam) (same).  Because Officers Foster and Garcia had probable cause to effect a traffic stop, they also had the lawful authority to direct Neria and Delatorre to exit the vehicle.

IV

The court next considers whether the search of the passenger compartment and the seizure of the bag containing the three firearms was lawful.

A

As a preliminary matter, the court notes that the police officers' authority to direct that Neria and Delatorre exit the vehicle does not justify the search of the vehicle's passenger compartment or the seizure of the bag containing the firearms.  Once the officers requested

---

[9]As the panel explained in *Meredith*:

> In *Mimms*, the Court held that once a vehicle has been lawfully detained for a traffic violation, safety concerns permit law enforcement officers to order the driver out of the vehicle.  In *Wilson*, the Court extended its holding in *Mimms* to permit law enforcement officers to order any passengers in the vehicle to exit.

*Meredith*, 480 F.3d at 370 (footnotes omitted).

- 6 -

that Neria and Delatorre exit the vehicle, they could not search or seize anything inside the vehicle unless they had an independent basis to conduct the search or seizure. *See Meredith*, 480 F.3d at 369 (noting that police officers' authority to order occupants out of vehicle did not extend to frisk of occupant, without reasonable suspicion that he was armed and dangerous, or search of passenger compartment, unless officers had reasonable suspicion that it contained weapons or contraband). In other words, the government cannot rely on *Wilson* or *Mimms* to justify the police officers' subsequent actions. But the government is not doing so here. In this case, there are two independent reasons why the police officers had the lawful authority to seize the bag with the firearms: (1) it was found during a valid search of the passenger compartment that was supported by probable cause, and (2) it was found during a valid protective search of the passenger compartment that was limited to areas in which a weapon may have been hidden.

B

1

"An exception to the Fourth Amendment's warrant requirement exists when a police officer has probable cause to search an automobile for contraband." *United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013) (citing *Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973)). "Probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." *United States v. Carrillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994) (citing *United States v. De Los Santos*, 810 F.2d 1326, 1336 (5th

Cir. 1987), *cert. denied*, 484 U.S. 978 (1987)).  To determine whether probable cause existed, "courts examine the totality of the circumstances." *Powell*, 732 F.3d at 372 (citing *Illinois v. Gates*, 462 U.S. 213, 234 (1983)).  "Probable cause exists if, under the totality of circumstances, there is a fair probability that . . . an illegal act is taking place." *United States v. Thompson*, 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (Fitzwater, C.J.) (citing *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006)).

2

The court holds that, before Officers Foster and Garcia began searching the passenger compartment of the vehicle, they had probable cause to believe that a narcotics violation was taking place.  When the officers approached the vehicle, they observed a baggie in plain view near (or on top of) the center console of the passenger compartment.  Both officers testified that the windows were open and that they had an unobstructed view inside the passenger compartment.  Both officers were experienced police officers—with a combined 26 years of experience between them—and they were both familiar with and had experience visually identifying illegal narcotics.  Each testified that the white residue appeared to be methamphetamine or cocaine.  Given that the vehicle was parked outside a known drug house in an area of frequent drug activity, and based on their experience visually identifying drugs, the officers had probable cause to believe that a crime involving illegal narcotics was taking place when they observed the baggie with the white residue.

Neria argues that the seizure was unlawful because the officers did not conduct a field test of the plastic baggie containing the white residue, and that, without confirmation that the

residue was a usable quantity of drugs, the officers did not have probable cause to believe a narcotics violation was occurring. The court disagrees. Under the circumstances of this case, the fact that the officers did not confirm their initial determination through field testing does not negate the fact that they had probable cause the moment they observed the bag with the white residue. The probable cause determination neither requires certainty nor retroactive verification. It merely requires a "fair probability" at the time the officers view the object in question. *See, e.g., United States v. Satterwhite*, 980 F.2d 317, 321 n.5 (5th Cir. 1992) ("Determining probable cause does not require certainty, but only a probability that contraband or evidence is located in a certain place."). Based on the facts and circumstances of this case, there was a fair probability at the time the officers viewed the baggie in question that a narcotics violation was taking place.

3

The court next holds that, once Officers Foster and Garcia had probable cause to believe a narcotics violation was taking place, they had lawful authority to search the passenger compartment of the vehicle. "It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995). Because Officers Foster and Garcia lawfully observed what appeared to be evidence of illegal narcotics, they had probable cause to search the passenger compartment of the vehicle for contraband or other evidence of a crime. Because their search and seizure was supported by probable cause, there was no Fourth

Amendment violation. *See, e.g., United States v. Medina*, 295 Fed. Appx. 702, 709 (5th Cir. 2008) (per curiam) (holding that officers had probable cause to search vehicle when they observed what appeared to be bundles of marihuana in back of cab through open door of vehicle).

## C

There is a second, independent basis that supports the search of the passenger compartment and seizure of the bag containing the firearms.

### 1

Under the Fourth Amendment, police officers may search

> the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, . . . if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (quoting *Terry*, 392 U.S. at 21). "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 1050 (quoting *Terry*, 392 U.S. at 27) (alteration and internal quotation marks omitted ). "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should . . . discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Id.* (citations omitted).

Under *Long*, [the Fifth Circuit] has found protective searches of

> automobiles valid . . . where the police officer had an objective
> reason to fear for his safety or the safety of others. Where [the
> court has] rejected a protective search, the officers had almost
> nothing on which to base a concern for safety; the police did not
> observe unusual weapons, nor did the individuals act in a
> particularly suspicious manner.

*United States v. Wallen*, 388 F.3d 161, 165 (5th Cir. 2004) (footnotes omitted).

2

The court holds that Officers Foster and Garcia had a reasonable suspicion to believe that Neria was dangerous at the time he was exiting the vehicle, and before he was fully secured. As the officers approached the vehicle, they observed Neria make a quick motion, bending down toward the floorboard. As Neria was exiting the vehicle, Officer Garcia asked him if he had any guns. Neria responded yes and pointed toward the floorboard of the front passenger seat (where he had been sitting). Officer Garcia perceived this gesture as Neria's attempt to retrieve the firearms. He told Neria not to do that and that he would retrieve them instead. Based on the location of the vehicle in a high-crime area and outside a known drug house, the officers' familiarity with the area, Neria's downward movement toward the floorboard when the officers initially approached the vehicle, Neria's affirmative indication that there were guns inside his vehicle when asked, and Neria's gesture toward the floorboard, it was reasonable for the officers to suspect that Neria might be dangerous.[10] Because Neria had not yet been handcuffed, and because he moved toward the floorboard

---

[10]Both officers testified that they were concerned for their safety. Officer Garcia testified, in particular, that he considered it a "dangerous situation."

of the vehicle when asked about the guns, the officers had lawful authority to do a protective search of the passenger compartment limited to areas in which a weapon might be hidden. A weapon could have been—and indeed, was—located on the passenger-side floorboard. Accordingly, the court holds that the search of the area surrounding the passenger-side floorboard and the seizure of the bag with the firearms was lawful as a valid protective search based on reasonable suspicion.

D

The court now turns to Neria's suggestion that this result is inconsistent with *Gant*. Neria maintains that because he and his brother were secured by the officers as soon as they exited the vehicle, any further search of the vehicle was unlawful under *Gant v. Arizona*, 556 U.S. 332 (2009). The government responds that, regardless whether the search is justified on the basis of probable cause or as a protective search, *Gant* does not apply.

1

In *Gant* the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. But this rule only applies when the search is made incident to arrest. *See United States v. Steele*, 353 Fed. Appx. 908, 910 (5th Cir. 2009) (per curiam) ("[T]he Supreme Court's recent ruling in *Gant* is inapplicable to the present case as the Court specifically limited its ruling to searches pursuant to an arrest, and the Court did not modify the standards regarding searches pursuant to the automobile

- 12 -

exception."). *Gant*, therefore, does not change the rule recognized in *United States v. Ross*, 456 U.S. 798, 820-21 (1982), which "authorizes a search of any area of the vehicle in which . . . evidence [of contraband] might be found." *Gant*, 556 U.S. at 347. Nor does it change the rule that a police officer is permitted to search a vehicle's passenger compartment when the officer has reasonable suspicion that the individual is dangerous and might access the vehicle to gain immediate control of weapons. *See id*. at 346-47 (discussing *Long*, 463 U.S. 1032). As discussed below, both of these exceptions are satisfied here.

2

*Gant* is inapplicable to this case because the search of the passenger compartment was supported by probable cause and was not justified as a search incident to arrest. As discussed above, Officers Foster and Garcia had probable cause to believe that (1) a narcotics violation was taking place and (2) they would find evidence or contraband inside the passenger compartment. *Gant* does not apply to this type of search.

*Steele* is illustrative. There, the defendant was stopped because his vehicle had an expired license plate. *Steele*, 353 Fed. Appx. at 909. Based in part on information supplied by an informant, the police had probable cause to believe that the defendant was engaged in drug trafficking. *Id.* at 910. On the basis of their probable cause determination, the police searched not only the passenger compartment of the vehicle but also a compartment under the carpet in the trunk of the vehicle. *Id.* The defendant argued that this search violated the rule of *Gant* because he had been secured, away from his vehicle, by the time the officers searched this compartment in the trunk. *Id.* at 909. The Fifth Circuit rejected this argument,

- 13 -

noting that the search was supported by probable cause, and not justified as a search incident to arrest. *Id.* at 910. The panel held that the police had lawful authority to conduct the search pursuant to a valid probable cause determination. *Id.*

*Steele* supports the result reached here. The officers approached the vehicle because it was parked illegally. Their probable cause determination was based on their observation of the baggie with the white residue and the facts and circumstances surrounding the location of the vehicle. On the basis of this probable cause determination, they searched the passenger compartment of the vehicle (in fact, a less invasive search than the search in *Steele*). As *Steele* recognized, *Gant* is inapposite to this type of search.

3

*Gant* likewise does not apply to a protective search of a vehicle's passenger compartment when the officers have reasonable suspicion to believe that the occupant is dangerous. As numerous courts have recognized, *Gant* does not affect the rule recognized in *Long*. *See, e.g., United States v. Morgan*, 729 F.3d 1086, 1089-90 (8th Cir. 2013) (holding that search underneath driver seat and ensuing seizure was valid protective search under *Long*); *United States v. Lurry*, 483 Fed. Appx. 252, 254-55 (6th Cir. 2012) (holding that search of vehicle's rear seat and ensuing seizure was valid protective search under *Long*); *United States v. Vinton*, 594 F.3d 14, 19-21 (D.C. Cir. 2010) (holding that search of vehicle's passenger compartment was valid protective search under *Long*). *Gant* does not apply to this type of search either.

V

Finally, the court considers whether Neria's post-arrest incriminating statements must be suppressed as fruit of the poisonous tree.

A

"The exclusionary rule prohibits introduction at trial of evidence obtained as the result of an illegal search or seizure." *United States v. Runyan*, 275 F.3d 449, 466 (5th Cir. 2001). The exclusionary rule also "encompass[es] evidence that is the indirect product or 'fruit' of unlawful police conduct." *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). The government bears the burden of demonstrating that the exclusionary rule should not apply to the fruits of an illegal search or seizure. *Id.* at 456 (citing *United States v. Houltin*, 566 F.2d 1027, 1031 (5th Cir. 1978)).

B

Because the court has held that the police officers' initial approach of the illegally-parked vehicle, their directive that Neria and Delatorre exit the vehicle, and the ensuing search and seizure were lawful, it follows that none of the incriminating statements in question are fruit of the poisonous tree.[11]  Accordingly, the court denies Neria's motion in this respect.[12]

---

[11]Neria does not challenge the adequacy of the *Miranda* warnings or any other aspect of his custodial interrogation on independent grounds.  His challenge is based exclusively on the fruit of the poisonous tree doctrine.

[12]During the hearing, Neria arguably suggested that his initial *pre-arrest* statement that he had guns inside the vehicle should be suppressed because he had not yet been given

*   *   *

For the reasons explained, Neria's motion to suppress is denied.[13]

**SO ORDERED.**

April 9, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

_____

*Miranda* warnings.  This argument, to the extent it is urged at all, lacks force.  When Neria made this statement, he had not yet been handcuffed, much less arrested.  And assuming *arguendo* that Neria made the statements in question during a custodial interrogation, Officer Garcia's question whether he had any guns satisfies the "public safety exception" to *Miranda.  See New York v. Quarles*, 467 U.S. 649, 658 (1984).  This exception applies when "law enforcement is confronted with an ongoing conflict, arrest, or other volatile situation." *United States v. Green*, 388 Fed. Appx. 375, 379 (5th Cir. 2010) (per curiam).  "The exception exists to permit law enforcement to neutralize any immediate or lingering danger to themselves or to the public." *Id.* at 379-80.  Here, Officer Garcia asked Neria the question as he was exiting the vehicle, which was parked outside a known drug house in a high-crime area, and after he had made a furtive gesture toward the floorboard.  Because Neria was not yet handcuffed, he still could have accessed the floorboard area and thus posed a serious safety risk to the officers.  Although the public safety exception is "narrow," *see Fleming v. Collins*, 954 F.2d 1109, 1112 (5th Cir. 1992) (en banc), it clearly applies under these circumstances. *See, e.g., United States v. Duncan*, 308 Fed. Appx. 601, 605-06 (3d Cir. 2009) (holding that public safety exception applied where, before handcuffing defendant, police asked defendant whether object in his pocket was a gun); *United States v. Reyes*, 353 F.3d 148, 154 (2d Cir. 2003) (holding that public safety exception applied where, before handcuffing defendant, police asked defendant whether he had anything that could hurt officers).

[13]At the hearing, the government suggested that some ammunition, jewelry, and a large sum of money were found during the search that occurred on July 30, 2012.  Neria does not move to suppress any of this evidence.  Accordingly, the court's decision is limited to the search of the vehicle passenger compartment, the seizure of the baggie with the white residue found near (or on top of) the center console, and the seizure of the bag containing the three firearms found on the floorboard of the vehicle.